**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SONU SINGH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1613-J** |
| | ) | |
| **WARDEN, DIAMONDBACK CORRECTIONAL FACILITY, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Sonu Singh, a noncitizen[1] and Indian national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Bernard M. Jones, II referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The undersigned set an expedited briefing schedule, Doc. 5, and the Petition is at issue. For the reasons set forth below, the undersigned recommends that the Court grant in part the Petition, Doc. 1, and order Respondents to provide Petitioner with a bond hearing within seven days or otherwise release him if there is no hearing within that time.

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. Background

Petitioner, a citizen of India, entered the United States on or about January 10, 2025, without inspection or admission near Otay Mesa, California, and he was taken into custody the same day. Pet. at 4; Doc. 8-1 at 1 (Notice and Order of Expedited Removal).[2] On January 11, 2025, ICE issued to Petitioner a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(i). Doc. 8-1 at 1-2; Resp. at 2. Petitioner expressed fear of returning to India and was examined for a credible fear determination. Resp. at 2; Doc. 8-2 at 1 (Notice to Appear). He remained in ICE custody. Resp. at 2. On February 4, 2025, ICE vacated its expedited-removal order and placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear. Doc. 8-2 at 1 (noting "an asylum officer has found [Petitioner] has demonstrated a credible fear of prosecution or torture"). ICE charged Petitioner with being inadmissible (1) under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection, and (2) under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as someone who did not have valid immigration documents when applying for admission. Doc. 8-2 at 1. Petitioner applied for asylum on August 28, 2025. Pet. at 11; Resp. at 2. An Immigration Judge ("IJ") denied his asylum application on May 6, 2026. Doc. 8-3 at 1 (IJ Order).

Petitioner has been in ICE detention since he entered the United States on January 10, 2025. Pet. at 4, 11. Respondents contend Petitioner is detained pursuant to 8 U.S.C.

---

[2] Page citations reference the Court's electronic case filing pagination.

§ 1225(b)(1)(A). Resp. at 3. Petitioner does not allege he requested a bond hearing. Such a request, though, would likely be futile because all IJs are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing.

On May 6, 2026, an IJ ordered Petitioner removed to India. *See* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Aug. 31, 2026). On May 28, 2026, Petitioner appealed the removal order to the Board of Immigration Appeals, and the appeal is currently pending. *Id.* Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Aug. 31, 2026).

## II. Petitioner's Claims

Petitioner asserts two grounds in his Petition.

- **Ground One: Violation of the Fifth Amendment**. Petitioner alleges his prolonged detention in ICE custody without a bond hearing violates his rights to due process. He claims: "Although I am not in deportation proceedings my Due Process was violated when they did not give me a bond hearing at the time. I am no longer eligible for bond but am entitled to be released being in detention over 18 months." Pet. at 9.

- **Ground Two: Violation of Due Process**. Petitioner alleges his continued detention without a bond hearing violates his rights to due process under the multi-factor test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Pet. at 10.

Petitioner asks the Court to order his "release from detention" with an order of supervision, and to order Respondents to "refrain from redetainment without proper notice." *Id.* at 7.

## III. **Standard of Review**

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. **Analysis**

### A. Section 1225(b)(1) applies to Petitioner's detention.

The section of the INA that governs noncitizens detained at the border is 8 U.S.C. § 1225. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Section 1225(b)(1) "governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1161 (D.N.M. 2014) (citing § 1225(b)(1)).

> Aliens who have not been admitted or paroled into the United States and who have not satisfactorily demonstrated to an immigration officer that the alien has been physically present in the United States continuously for the prior two years are subject to expedited removal without further hearing or review, unless the alien indicates an intention to apply for asylum or a fear of persecution, at which point the immigration officer shall refer the alien for an interview by an asylum officer.

*Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)-(iii)).

Section 1225(b)(1)(B)(ii) further requires that, if an asylum officer determines a noncitizen has a credible fear of persecution, the noncitizen shall be detained for further consideration of the application for asylum. The Notice to Appear here reflects an asylum officer found Petitioner had "demonstrated a credible fear of persecution or torture," and ICE vacated his expedited-removal order. Doc. 8-2 at 1. As such, Petitioner is being detained pursuant to § 1225(b)(1)(B)(ii)[3] and is not statutorily entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (explaining the "plain meaning" of § 1225(b)(1)(B)(ii) "is that detention must continue until immigration officers have finished 'considering' the application for asylum" (quoting § 1225(b)(1)(B)(ii)) (citation modified)).

**B. Petitioner's prolonged detention violates substantive due process, and the proper remedy is a bond hearing.**

Petitioner alleges due process violations based on his prolonged detention in ICE custody without a bond hearing. Pet. at 9-10. He claims although he is "not in deportation proceedings [his] Due Process was violated when they did not give [him] a bond hearing

---

[3] Respondents agree that Petitioner "falls within § 1225(b)(1) because of being encountered near the border within one day of his illegal arrival." Resp. at 3. Petitioner acknowledges he is "no longer eligible for bond," Pet. at 9, which is consistent with the statutory limitation on bond under § 1225(b)(1). In his Reply, though, Petitioner argues for the first time that § 1226(a) governs his current detention and entitles him to a bond hearing. Reply at 1-3. The Tenth Circuit recently held "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a)." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026). Petitioner was an "arriving alien" detained at the border and falls under § 1225(b)(1). In any event, his new Reply argument for a bond hearing under § 1226(a) comes too late and is waived. *See Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *2 (W.D. Okla. Apr. 16, 2026) (noting "it is well established that issues raised for the first time in a reply are deemed waived").

at the time." *Id.* at 9. Petitioner further claims he is "no longer eligible for bond" but "entitled to be released being in detention over 18 months." *Id.* He seeks "release from detention" on an "order of supervision." *Id.* at 7 (citation modified).

First, Petitioner is simply mistaken about his current immigration proceedings, as he does not yet have a final order of removal under 8 C.F.R. § 1241.1. Petitioner even acknowledges elsewhere in his Petition that his appeal of immigration proceedings is "pending." Pet. at 4-5. Second, though Petitioner requests only immediate release—because he believes he is "not in deportation proceedings" and "no longer eligible for bond," Pet. at 9—this Court can still consider a bond hearing as a lesser remedy than release. *See Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026) ("As a remedy, Petitioner requests his immediate release, but the Court concludes that a bond or custody redetermination hearing is the appropriate remedy." (citing *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)). Accordingly, the Court must determine whether Petitioner has established a due process violation, and if so, then consider the scope of habeas relief.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, [the Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citation modified). In *Demore*, a noncitizen subject to mandatory detention under a similar statute, 8 U.S.C. § 1226(c), claimed his detention "violated due process because [ICE] had made no determination that he posed either a danger to society or a flight risk." 538 U.S. at 514.

The Supreme Court held that detention of noncitizens "during removal proceedings is a constitutionally permissible part of" the removal process. *Id.* at 531. Later, in *Jennings v. Rodriguez*, the Supreme Court ruled that as a matter of statutory construction, § 1225(b)(1)(B)(ii) mandates detention while a noncitizen's asylum claims are pending. 583 U.S. at 299, 302-03. However, the Supreme Court explicitly reserved ruling on whether prolonged detention under § 1225(b) could violate due process. 583 U.S. at 312.

Neither the Supreme Court nor the Tenth Circuit has subsequently ruled on the constitutional issue of prolonged detention without a bond hearing under § 1225(b). "Since *Jennings*, courts have 'sharply disagreed about the reach of the Due Process Clause as applied to arriving aliens.'" *Giraldo Nieto v. Ceja*, --- F. Supp. 3d ---, 2025 WL 4087626, at *6 (D. Colo. June 12, 2025) (citation modified) (quoting *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020)). The post-*Jennings* cases from this circuit considering due process challenges to prolonged detention under § 1225(b)(1) illustrate this strong disagreement. Some courts have found prolonged detention under § 1225(b)(1) does not violate due process because noncitizens are entitled only to the process provided to them by statute and detention during removal proceedings is non-punitive. *See Giraldo Nieto*, 2025 WL 4087626, at *7-9 (concluding prolonged detention of a noncitizen held under § 1225(b)(1) does not violate due process); *Doe v. Bondi*, No. 25-cv-2712, 2025 WL 3516292, at *6-10 (D. Colo. Nov. 4, 2025) (same).

Other courts in the circuit have concluded detention under § 1225(b)(1) without a bond hearing does violate due process when it becomes so prolonged as to be constitutionally unreasonable. *See Ali X v. Bondi*, No. 26-cv-1367, 2026 WL 1857825, at

*6 (D. Colo. June 29, 2026) ("[T]he Court concludes that Petitioner's detention has become constitutionally unreasonable and continued detention without any individualized custody determination violates procedural due process."); *Marquez v. Warden*, No. 26-cv-1527, 2026 WL 1557180, at *2 (D.N.M. June 2, 2026) ("[U]nder the circumstances of this case, Petitioner's indefinite, ongoing detention of more than seven months, with no reasonably foreseeable end in sight . . . is punitive and a violation of her Fifth Amendment substantive due process rights."); *Mardanpour v. Warden*, No. 26-cv-550, 2026 WL 963164, at *6 (D.N.M. Apr. 9, 2026) ("Petitioner's indefinite, ongoing detention exceeding fourteen months is punitive and therefore a violation of Petitioner's Fifth Amendment substantive due process rights.").[4]

Liberally construing Petitioner's grounds for relief, the undersigned considers any procedural due process or substantive due process violations from his prolonged detention. As a threshold matter, any procedural due process claim should be denied. It is well established that for a procedural due process analysis, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *see also Rolia v. Mullin*, No. CIV-26-423-R, 2026 WL 1833993, at *1 (W.D. Okla. June 25, 2026) (concluding in the § 1226(a) context that "the process Petitioner is due is the process

---

[4] While district courts in the Tenth Circuit are split on this question, "[t]he majority of courts who have considered this issue have determined that the due process protections recognized in *Zadvydas* prohibit indefinite detention under § 1225(b)(1)(B)(ii)." *Leonteva v. Noem*, --- F. Supp. 3d ---, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026).

provided by that statute"). Because § 1225(b)(1)(B)(ii) mandates detention without the opportunity for a bond hearing, Petitioner's ongoing detention without a bond hearing does not violate his procedural due process rights.

As to substantive due process, however, things are different. While no Judges in this District have directly addressed whether prolonged detention—specifically of a noncitizen detained at the border, without a bond hearing, under § 1225(b)(1)—violates substantive due process, the undersigned finds the reasoning of Judge Russell and Judge Mitchell in recent cases considering due process claims based on prolonged detention under § 1226(c) persuasive on this question. Section 1226(c) requires the Secretary of Homeland Security to detain noncitizens who have committed certain criminal offenses pending the disposition of their removal proceedings. In *Jennings*, the Supreme Court observed the mandatory detention provisions of §§ 1225(b) and 1226(c) operate in substantially the same manner. 583 U.S. at 303.

Accordingly, in the absence of cases in this District directly addressing whether prolonged detention under § 1225(b)(1)(B)(ii) violates due process, cases considering similar challenges by noncitizens detained under § 1226(c) are instructive. *See, e.g.*, *Shansiev v. Warden, Folkston ICE Processing Ctr.*, No. 25-CV-223, 2026 WL 1738121, at *10 (S.D. Ga. June 16, 2026) ("District courts considering the constitutionality of prolonged § 1225(b) detention frequently employ a balancing test" that "is sometimes borrowed from cases related to § 1226(c) detainees."); *Gevorg v. Warden of Golden State Annex Det. Facility*, No. 25-cv-992, 2025 WL 3496436, at *6 (E.D. Cal. Dec. 5, 2025) (explaining how "multiple United States district courts have found" due process violations

under § 1225(b) by using "a myriad of overlapping balancing tests, often initially conceived and applied in the context of a lawful permanent resident detained under § 1226(c), to determine whether detention of an arriving alien under § 1225(b) without a bond hearing has become so prolonged that it violates petitioner's due process rights under the Fifth Amendment").

In *Jalloh v. Garland*, Judge Russell considered a prolonged detention claim brought by a noncitizen detained under § 1226(c). No. CIV-22-908-R, 2023 WL 3021514, at *1 (W.D. Okla. Mar. 9, 2023). He explained that "[i]n *Demore*, the Supreme Court declined to indicate at what point a period of mandatory detention is so prolonged that detainees are entitled to an individualized determination as to their risk of flight and dangerousness." *Id.* at *2. To answer that question, Judge Russell concluded, it was necessary to consider six factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *3 (citation modified). Ultimately, Judge Russell concluded those factors weighed in favor of finding a due process violation and ordered the government to provide the noncitizen with a bond hearing. *Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3690252,

at *3 (W.D. Okla. May 26, 2023) (adopting *Jalloh v. Garland*, 2023 WL 3690259 (W.D. Okla. Apr. 26, 2023) (R&R)).[5]

More recently, Judge Mitchell considered a due process claim of prolonged detention brought by a noncitizen detained under § 1226(c) in *Lopez Pizarro v. Gantt.* No. CIV-26-362-SLP, 2026 WL 2029042, at *3 (W.D. Okla. June 12, 2026) (R&R), *adopted*, 2026 WL 2023599 (W.D. Okla. July 13, 2026). In evaluating whether the petitioner's detention was so prolonged as to be constitutionally unreasonable, Judge Mitchell relied on a three-factor test used by the Eastern District of California in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). *Lopez Pizarro*, 2026 WL 2029042, at *3. That test considers "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Id.* (quoting *Lopez*, 631 F. Supp. 3d at 879). Applying those factors, Judge Mitchell concluded the petitioner had failed to establish his detention was so prolonged as to violate due process. *Id.* at *4. Chief Judge Palk adopted Judge Mitchell's recommendation. 2026 WL 2023599, at *1.

---

[5] In a recent decision, Judge Russell also adopted Judge Mitchell's recommendation to evaluate a prolonged detention claim brought by a noncitizen detained under § 1226(c) using the factors established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Hernandez v. Mullin*, No. CIV-26-475-R, 2026 WL 1625669, at *2-3 (W.D. Okla. June 5, 2026) (adopting in part *Hernandez v. Mullin*, 2026 WL 1245748, at *4-5 (W.D. Okla. May 6, 2026) (R&R)). Judge Russell explained that while "*Mathews* generally applies in the context of procedural rather than substantive due process," it can be applied to substantive due process claims brought by noncitizens detained under § 1226(c). 2026 WL 1625669, at *2-3. The undersigned, though, is persuaded that Judge Russell's factors in *Jalloh* are more instructive than the *Mathews* factors for evaluating the constitutionality of a petitioner's prolonged detention under § 1225(b)(1).

The general approach Judge Russell and Judge Mitchell have taken to due process claims for prolonged detention under § 1226(c) aligns with how other courts have assessed such claims regarding prolonged detention under § 1225(b). *See, e.g.*, *Ali X*, 2026 WL 1857825, at *5 (applying in a case of prolonged detention under § 1225(b) the "six-factor test" for prolonged detention under § 1226(c) in *Singh v. Choate*, No. 19-cv-909, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019)); *Khasanova v. Rokosky*, No. CV-26-763, 2026 WL 1815723, at *6 (D. Ariz. June 24, 2026) (applying the same six factors); *Gevorg*, 2025 WL 3496436, at *6 (same); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (same); *see also Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 850 (E.D. Va. 2020) (noting prolonged detention under § 1225(b) can become "unreasonable and constitutionally infirm" based on "a variety of factors, which generally include (1) the length of Petitioner's detention; (2) the length of any delays attributable to the Petitioner; and (3) his likelihood of ultimately being ordered removed").

Consistent with the approach of these courts, the undersigned finds the six-factor test that Judge Russell applied in *Jalloh* appropriate for determining whether Petitioner's detention under § 1225(b)(1)(B)(ii) is constitutionally unreasonable. *See also Tabatabaei v. Figueroa*, No. CIV-26-1048-G, 2026 WL 2323603, at *6-8 (W.D. Okla. Aug. 11, 2026) (recent recommendation by the undersigned to apply the same six-factor test in another

habeas matter involving prolonged detention under § 1225(b)(1)(B)(ii)) (R&R). The undersigned now considers each of the six factors in turn.[6]

**1. Total length of detention to date.**

Petitioner has been detained since January 10, 2025, which currently amounts to more than 19 months of continuous detention. Pet. at 4; Doc. 8-1 at 1. In analogous cases where petitioners were detained for similar periods of time, courts in this Circuit have concluded the length-of-detention factor weighed in favor of finding a due process violation. *See, e.g.*, *Ali X*, 2026 WL 1857825, at *5 (finding a detention "period exceeding 21 months" to be "unreasonably prolonged"); *Marquez*, 2026 WL 1557180, at *2 (finding an "ongoing detention of more than seven months . . . constitutionally excessive"); *Mardanpour*, 2026 WL 963164, at *8 (finding an "ongoing detention exceeding fourteen months" to be constitutionally excessive); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (R&R) (noting "Petitioner has been in detention [under § 1225(b)(1)] for approximately 17 months, which is a very long time," and recommending such "length of petitioner's detention strongly favors granting him a bond hearing"), *adopted*, 385 F. Supp. 3d at 1106-07. Thus, this first factor weighs heavily in Petitioner's favor.

[6] To the extent the Court declines to apply the *Jalloh* factors and instead applies the three-factor test Judge Mitchell used in *Lopez Pizarro*, those factors also weigh in favor of finding Petitioner's ongoing detention is constitutionally unreasonable.

**2. Likely duration of future detention.**

The next factor is the likely duration of Petitioner's future detention. "Courts examine the anticipated duration of all removal proceedings—including administrative and judicial appeals—when estimating how long detention will last." *Jalloh*, 2023 WL 3690259, at *5 (citation modified). An IJ has ordered Petitioner removed, but he has appealed that decision. *See* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Aug. 31, 2026).

"Petitioner's appeal to the BIA and, if unsuccessful there, to the Tenth Circuit Court of Appeals, could take years." *Mardanpour*, 2026 WL 963164, at *6; *see also Ali X*, 2026 WL 1857825, at *5 ("Although DHS's appeal remains pending before the Board of Immigration Appeals, no decision has yet been issued. Thus, Petitioner's detention may continue for a substantial and presently indeterminate period."); *Banda*, 385 F. Supp. 3d at 1119 ("Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer."). "Where either party may appeal an immigration court's decision, this factor weighs in favor of the petitioner." *Jalloh*, 2023 WL 3690259, at *5 (citation modified). Because Petitioner's appeals process may take several months or even longer, this factor also favors granting him a bond hearing.

**3. Conditions of detention.**

The next factor considers "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. The more that the

conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).

The Petition does not include any allegations about the conditions of Petitioner's detention. However, he is detained at Diamondback Correctional Facility, which ICE's website describes as a "jail." *Diamondback Correctional Facility: Sending Items to Detainees*, U.S. Immigration & Customs Enforcement, https://www.ice.gov/detain/detention-facilities/diamondback-correctional-facility (noting "[t]he jail will not accept certain items through the mail") (last accessed Aug. 31, 2026). Where a noncitizen is "confined in a secure detention facility and is subject to significant restraints on his liberty," his confinement "is akin to criminal incarceration." *Ali X*, 2026 WL 1857825, at *5. Thus, this factor also weighs in Petitioner's favor.

**4. Delays in the removal proceedings caused by Petitioner.**

The next factor is whether Petitioner has delayed the removal proceedings against him. "In considering delays in the removal proceedings caused by the detainee, courts should be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Jalloh*, 2023 WL 3690259, at *5 (citation modified). However, a noncitizen's mere exercise of his legal rights is not sufficient to weigh against him; instead, courts look for evidence of "bad faith or obstructive conduct." *Mbalivoto*, 527 F. Supp. 3d at 851; *see also Ali X*, 2026 WL 1857825, at *5 ("Petitioner's pursuit of asylum and defense against removal do not constitute unreasonable delay and were exercised as rights afforded to him under the

immigration laws."). As such, this factor is neutral. *See Ali X*, 2026 WL 1857825, at *5 (finding factor "neutral" where any delay in a petitioner's removal proceedings was not attributable to him).

**5. Delays in the removal proceedings caused by the government.**

Next, the Court must consider whether any delays in the removal proceedings were caused by the government. Petitioner does not allege any specific action or conduct in bad faith by Respondents to cause delays in his proceedings. While the undersigned is sensitive to challenges Respondents face in processing a high volume of removal proceedings and recognizes the sheer number of cases before the Immigration Courts may result in inevitable delays, those delays are ultimately attributable to the government. Nevertheless, because there is no evidence of "lack of diligence or bad faith," *Mbalivoto*, 527 F. Supp. 3d at 851, on the part of Respondents, this factor is also neutral.

**6. Likelihood that removal proceedings will result in a final order of removal.**

Finally, the Court must consider whether, at the conclusion of his removal proceedings, Petitioner will actually be removed. "The more likely that the alien will be removed, the longer the detention that will be deemed reasonable." *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881, 2025 WL 3653158, at *12 (D. Colo. Dec. 17, 2025) (citation modified). Petitioner does not allege it is unlikely that he will be removed. In evaluating this factor, courts consider the extent to which either the petitioner or the government has prevailed in Immigration Court. Here, an IJ has issued an order of removal against

Petitioner. While he has appealed that order to the BIA, no evidence in the record suggests that appeal is likely to succeed. Accordingly, this factor weighs against Petitioner.

**7. Conclusion**

In weighing these six factors, the undersigned finds Petitioner's continued detention of more than 19 months without an individualized bond hearing has become unreasonable and in violation of his due process rights. Notably, in *Jalloh*, Judge Russell found a violation of the petitioner's due process rights after concluding the first three factors weighed in favor of the petitioner, factors four and five were neutral, and the sixth factor weighed against the petitioner. 2023 WL 3690252, at *2. Like Petitioner's case, Judge Russell found it relevant in *Jalloh* that the petitioner there had "been detained for approximately 19 months in a criminal correctional facility and that it may be several more months before all appeals are exhausted." *Id*. at 2. *Accord De Zarate v. Choate*, No. 23-CV-571, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023) (finding, for a petitioner detained for more than 14 months under § 1226(c), that even when "factors one, two, and three weigh in favor of [petitioner]; factors four and five are neutral; and factor six weighs against [her]," the factors "when considered together" favor petitioner and a finding that her due process rights had been violated (citation modified)).

Where a noncitizen has been detained for an unconstitutional length of time in violation of due process, as Petitioner has, he is entitled to an individualized bond hearing. "Continued detention requires an individualized bond hearing before an Immigration Judge to comport with due process." *Jalloh*, 2023 WL 3690252, at *2 (citation modified); *see also Ali X*, 2026 WL 1857825, at *6 ("Petitioner's detention has become constitutionally

unreasonable and continued detention without any individualized custody determination violates procedural due process."); *Khasanova*, 2026 WL 1815723, at *8 ("Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ."). Accordingly, the Court should order Respondents to provide Petitioner with an individualized bond hearing before a neutral IJ.[7]

## V. <u>Recommendation and Notice of Right to Object</u>

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **September 8, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **September 11, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[7] Petitioner asks the Court for "release from detention" under an "order of supervision" and for Respondents to "refrain from redetainment without proper notice." Pet. at 7 (citation modified). While some courts have ordered release as a remedy in immigration habeas matters, *see Mardanpour*, 2026 WL 963164, at *8, the undersigned concludes a bond hearing is the appropriate remedy here.

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 31st day of August, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE